**STATE of Missouri, ex rel. STATE HIGHWAY COMMISSION of Missouri, Plaintiff-Respondent,**

v.

**BERKELEY SCHOOL DISTRICT, et al., Exceptions of Edward F. Conrey, Thelma M. Conrey and Ed Conrey, Inc., a corporation, Defendants-Appellants.**

**No. 41745.**

Missouri Court of Appeals,
Eastern District,
Division Two.

April 21, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 12, 1981.

196

Glennon R. Vatterott, St. Ann, for defendants-appellants.

Richard Baker, Donna Clayton, Kirkwood, for plaintiff-respondent.

WEIER, Judge.

This is a condemnation case in which the commissioners awarded defendants the sum of $74,700 as damages and both parties filed exceptions. In a trial on plaintiff's exceptions to the commissioners' award, the jury awarded defendants the sum of $52,576. Defendants appeal. We reverse and remand.

Defendants owned a tract of land comprising some 83,501 square feet in the village of Bel Ridge in St. Louis County. It was an irregular-shaped tract of land located on the north side of Natural Bridge Road equally distant between Brown Road on the west and North Hanley Road to the east. The land had a frontage along Natural Bridge Road of some 310 feet. Plaintiff condemned 57,760 square feet of said property and imposed a 631 square foot construction easement on the remaining 25,741 square feet. At the time of the taking on April 18, 1977, the condemned property was zoned residential. Plaintiff sought through a motion in limine to exclude the zoning history of the tract on the grounds that it was not relevant to the issue of damages. The trial court sustained this motion for the reason that both parties agreed the highest and best use of the property was other than residential.

Defendants' witnesses testified that the highest and best use of the property was commercial. Defendants' valuation expert also testified that the highest and best use was commercial and he based his appraisal on this use. He testified that as a result of the taking defendants suffered damages of $154,100.

Plaintiff's experts testified that the highest and best use of the condemned property was light industrial. One expert placed defendants' loss at $35,500 while the other expert testified that defendants had sustained damages of $40,200.

The jury returned a verdict on March 9, 1979, in favor of defendants in the amount of $52,576. The trial court rendered judgment in accordance with the verdict and ordered defendants to repay the sum of $22,124 together with interest thereon at the rate of 6% per annum from September 23, 1977.

Defendants assign eight points of trial court error. We reverse because of trial court error set out in point three and go immediately to a discussion and resolution of the problem there presented. Those remaining points not dispositive of this case but which contain issues which may reoccur upon a new trial, are discussed and ruled on for the sake of judicial economy so they may not cause problems when the case is retried.

Defendants contend in their third point that the trial court erred in permitting Tom McReynolds, plaintiff's appraiser, to testify to certain comparable sales which he did not personally verify. The objection goes to the detailed use of comparables not personally verified, not to the right of the expert witness to give his opinion as to the value of the land condemned. We agree with defendants' contention and it is on this point that we reverse and remand.

As a general rule, the market value of real estate is established by voluntary sales of other similar property made in the same general vicinity and not too remote in time to the date of the taking. *State ex rel. State Highway Commission v. Barron*, 400 S.W.2d 33, 36 [4] (Mo.1966). An expert testifying on the value of property in a condemnation proceeding may base his opinions in part upon his investigation and his inquiries concerning other sales even though such sources constitute hearsay and would ordinarily be inadmissible. An expert testifying in an eminent domain proceeding, however, should make careful inquiry into the facts concerning similar sales upon which he bases his opinion as to land values. *Barron, supra* at 37 [12].

Plaintiff's appraiser testified to seven comparable sales of industrial property. On

cross-examination plaintiff's appraiser testified that he had personally confirmed three of the sales. As to the other four, he stated that "I have no recollection of confirming them, so they must have been confirmed by someone in my office." Defendants then made a motion to strike any testimony with regard to comparable sales not confirmed by Mr. McReynolds. The court overruled the motion.

■ We find that the admission of this evidence exceeds the proper bounds of expert testimony concerning comparable sales in a condemnation proceeding. Although the hearsay rule is not to be applied to prevent an expert witness from giving the basis of his opinion of value, *State ex rel. State Highway Commission v. Carlson*, 463 S.W.2d 74, 78 (Mo.App.1970), this exception is justified on the basis that the expert in a condemnation proceeding will have made careful inquiry into the facts upon which he bases his opinion thus providing a sufficient guarantee of trustworthiness. In the present case it is clear that plaintiff's expert did not make such a careful inquiry but rather relied on some unknown person in his office. This gives legal license to introduce factual data from an unknown source. It places a false credibility on unreliable information. This is not compliance with the standard of "careful inquiry" required in *Barron, supra* at 37. We believe this expands the hearsay exception to impermissible limits. We therefore reverse and remand. We now discuss defendants' points on appeal that will likely recur on retrial.

Defendants' first and fourth points on appeal will be considered together because both assign trial court error to the exclusion of evidence and comments by counsel regarding correspondence and personal contacts by plaintiff with the chairman of the planning and zoning commission of the Village of Bel Ridge. Defendants contend in their first point that evidence concerning zoning and the history of zoning the condemned property is admissible in any condemnation proceeding. Defendants contend in their fourth point that the exclusion of such evidence prevented them from establishing that the condemned property would have been zoned light industrial except for plaintiff.

Before trial plaintiff presented a motion in limine to the trial court seeking to exclude correspondence or contacts by plaintiff with the Bel Ridge zoning authority on the grounds that such evidence was incompetent, irrelevant and immaterial; that defendants had no right to have their property rezoned in any particular way and no right to a better, higher or more commercially valuable use; and that plaintiff was making no contention that the zoning on the portion of the subject property taken by plaintiff represented the highest and best use of the property on the date of taking but rather that the highest and best use of the property was light industrial. The trial court sustained the motion because both parties agreed the best use of the property was not residential even though the condemned property was zoned residential under the zoning ordinance. The trial court found that the evidence would only confuse the jury to go into all the ramifications of the legal zoning of the subject property on the date of the taking on April 18, 1977.

■ The admissibility of evidence in condemnation actions depends upon whether it tends to help the jury in arriving at the issue of value and damages. *State ex rel. State Highway Commission v. Texaco, Inc.*, 502 S.W.2d 284, 288 [1] (Mo.1973). The only disputed issue in the present case was the fair market value of the condemned property. More specifically, the dispute concerned the highest and best use of that property. In determining fair market value, consideration should be given to all uses to which the property may best be applied or for which it is best adapted, under existing conditions and under conditions to be reasonably expected in the near future. MAI 16.02. Zoning is relevant to a property's highest and best use in so far as it may limit or encourage certain uses of property. In the present case, however, both parties agreed that the highest and best use of the property was other than residential and nei-

ther party attempted to value it as residential. Defendants' witnesses testified that the highest and best use of the property was commercial while plaintiff's witnesses testified that the highest and best use was light industrial. Based on these facts we do not find trial court error in excluding evidence of the zoning history of the condemned property.

■ Defendants' second point contends that the present zoning of a condemned tract is an essential element in its valuation and therefore the trial court erred in ruling that evidence regarding the present zoning was inadmissible. This point too fails because of the agreement that each side could present evidence of the highest and best use of the property without reference to zoning.

■ Defendants' fifth and sixth points contend that settlement offers in a condemnation proceeding are admissible as admissions against interest because 42 U.S.C. §§ 4651–4655[1] require the state to perform certain obligations prior to condemnation of property where federal aid is involved. Among these obligations imposed on the condemning authority is the requirement that it make a bona fide effort to settle and avoid condemnation where federal aid is concerned. Included are an appraisal of the property, establishment of a just compensation for the property and furnishing the owner with a statement and summary of the basis for the amount established as compensation with an offer of the compensation so established. *State ex rel. State Highway Commission v. Volk*, 611 S.W.2d 255, 257 (Mo.App.1980). Defendants here attempted to introduce a letter from the district engineer of the Highway Commission making such an offer. Even though required to be made, such an offer in settlement negotiations is an offer to compromise and may not be introduced in subsequent litigation. *Volk, supra* at 259 [5]. *See also, Shoemake v. Murphy*, 445 S.W.2d 332, 334 [1] (Mo.1969).

Respondent's motion to dismiss the appeal for failure to comply with the rules is denied.

The judgment is reversed and remanded.

PUDLOWSKI, P. J., and GUNN, J., concur.

---

1. 42 U.S.C. §§ 4651–4652, 4655 are reproduced in large part in *State ex rel. Weatherby Advertising Company, Inc. v. Conley*, 527 S.W.2d 334, 338–340 (Mo. banc 1975).